IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DAMARIS PLAISANT MCCALLEY,           §
                                     §
              Plaintiff,             §
                                     §
V.                                   §        No. 3:20-cv-3196-B-BN
                                     §
UT SOUTHWESTERN MEDICAL              §
CENTER, ET AL.,                      §
                                     §
              Defendants.            §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Damaris Plaisant McCalley, at least at the time that she filed this *pro se* federal action, was the *pro se* plaintiff in a civil action pending in a state court in Tarrant County, Texas involving several of the defendants also named here. *See McCalley v. Cox*, No. 017-312809-19 (17th Dist. Ct., Tarrant Cnty., Tex.).

United States District Judge Jane J. Boyle referred Ms. McCalley's case to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

On October 23, 2020, the undersigned entered findings of fact and conclusions of law recommending that the Court abstain from exercising jurisdiction over this case because Ms. McCalley, through her federal action, seeks to enjoin the ongoing state proceeding that she filed in Tarrant County [Dkt. No. 9] (the Screening FCR); *see also id.* at 7-8 (explaining that abstention is particularly appropriate insofar as Ms. McCalley attempts "to request that a federal district court direct how a state court should enforce its own orders in a pending proceeding" (citations omitted)).

On November 1, 2020, Ms. McCalley filed a notice in this case indicating that she had terminated the Tarrant County case. *See* Dkt. No. 18 at 2 ("Please read this filing I have entered with the Tom Vandergriff Courthouse. As that case is now terminated due to overwhelming legal violations and criminal activity and the time for any injunctive action needed has now passed, this court has jurisdiction.").

In response, the undersigned withdrew the Screening FCR and entered an order questioning whether there is subject matter jurisdiction and requiring that Ms. McCalley file a written response by December 4, 2020 to show the Court that it has jurisdiction over her lawsuit [Dkt. No. 19] (the Subject Matter Jurisdiction Order). The Court then granted Ms. McCalley leave to proceed *in forma pauperis* and denied her motion to appoint counsel. *See* Dkt. No. 22. Ms. McCalley objected to the denial of her motion and re-urged the Court to appoint her counsel. *See* Dkt. Nos. 25, 28, & 33. And Judge Boyle overruled the objections and denied Ms. McCalley's subsequent motions to appoint counsel. *See* Dkt. No. 37.

Ms. McCalley has noticed an appeal of Judge Boyle's interlocutory order. *See* Dkt. Nos. 38 & 39. But, even "in an action brought under 42 U.S.C. § 1983, a district court's interlocutory order denying a motion for appointment of counsel is not immediately appealable under the collateral-order doctrine." *Williams v. Catoe*, 946 F.3d 278, 281 (5th Cir. 2020). So Ms. McCalley's notices do no prevent the Court from continuing to inquire whether it has jurisdiction to consider her case and, if so, whether it should exercise that jurisdiction. *Cf. United States v. Green*, 882 F.2d 999, 1001 (5th Cir. 1989) ("Notice of appeal from a non-appealable order ... does not render

void for lack of jurisdiction acts of the trial court taken in the interval between filing of the notice and dismissal of the appeal." (citing *United States v. Hitchman*, 602 F.2d 689, 691 (5th Cir. 1979))).[1]

To advance this inquiry, Ms. McCalley responded to the Subject Matter Jurisdiction Order with an amended complaint, a second amended complaint, and multiple notices to the Court. *See* Dkt. Nos. 30, 31, 32, 34, 35, & 36.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss this action without prejudice.

## Applicable Background

In her initial complaint, filed October 19, 2020, Ms. McCalley named as defendants in this action at least one hospital; multiple physicians; attorneys, including the Attorney General of Texas; government entities, including the Texas Medical Board; Zoom Videoconferencing; and the judge presiding over her state case, explaining, in part, "[l]et me be clear that my suit against Judge David L. Evans is not a monetary one at this time, however if he continues to violate my Federal Rights and grants the Defendants any attorneys fees or costs me my case as he HAS in fact been colluding with the Defendants it will become a monetary case against him." Dkt. No. 1 at 6. And, as Ms. McCalley's further allegations show, she at least initiated this lawsuit to request that a federal court intervene in the state proceeding to assist her.

_____

[1] *See also Nascimento v. Dummer*, 508 F.3d 905, 909-10 (9th Cir. 2007) ("[W]hen a litigant makes an improper interlocutory appeal, such action will not throw a monkey wrench into the machinery of our justice system. Instead, when an improper appeal is taken, the district court retains its jurisdiction to act on the case, and its extant orders must be followed by the litigants, at risk of grave sanction.").

*See, e.g.*, *id.* at 6-7 ("I cannot access Zoom due to technical and equipment issues and I have told the Tarrant County Courthouse many times, yet they scheduled another Zoom hearing I cannot attend on Oct. 21st, 2020 and are simply thumbing their nose at Federal, State, Criminal and Civil Law.").[2]

Although Ms. McCalley filed an amended and second amended complaint, on December 3 and December 4, 2020, respectively, the Federal Rules of Civil Procedure allow for just one opportunity to amend a pleading as of right. *See* FED. R. CIV. P. 15(a)(1). So the amended complaint is the operative pleading before the Court.

Ms. McCalley begins this pleading by explaining that

> [t]his suit will be over damages exceeding 75,000, hence is jurisdictional. As the state court and entities have failed to issue me my medical records which I desperately need since I am sick, failed to act on any of my subpoenas for my medical records and to interstate entities, this is perhaps a jurisdictional issue as it is a Federal Question so I have the right to try in Federal Court. The Defendants were denying me medical records and any discovery over my injuries which are pertinent to my

---

[2] *See also id.* at 7 ("I would request that it be ordered that the Tom Vandergriff Court be allowed to have me attend in person AFTER I have been cleared by a psychiatrist who can treat me for PTSD as that is how I most effectively communicate due to my documented disabilities of ADD and Anxiety over all this."); *id.* at 8 ("I need action to get the Attorney General and UT Southwestern to stop communicating with my healthcare providers, the OCR, HHS and law enforcement entities charged with investigating this case."); *id.* at 9 ("As I argue that the Judges on my case intend to violate my 7th Amendment Right to Trial by Jury and are subverting Federal Rules of Discovery, I request that the medical malpractice suit at the Tom Vandergriff Courthouse be stayed until we can determine whether Tort Reform is not, in fact, destroying my Federal Civil and Victims Rights .... Furthermore, as I contend the Attorney General and other Defendants are involved in the criminal activity of bribing my medical experts, a determination of malpractice cannot be determined upon falsified witness testimony. All of the Attorneys in my case in Fort Worth have been involved in these crimes to hide what has happened to me. I do NOT have the money to purchase new experts so the case at the Tom Vandergriff Courthouse MUST be stayed until the truth can come out.").

care under Chapter 74 law which wrongfully subverts the discovery process of Rule 26 which pertains to all cases which is Federal Law as well as HIPAA law in defiance of Supremacy Doctrine. The issues contained in this case have caused me immediate, eminent past and future harm on a daily basis (see my expert reports from treating as well as non treating physicians) as well as financial damages and blocked my access to the courts. They have violated the Americans With Disabilities Act by not accommodating me in any way based on my needs and disabilities. My physicians said I was not physically or mentally well enough to attend the hearing on November 30th and needed an attorney which I could not find based on Chapter 74 blocking access to attorneys by the financially indigent. The state court said I cannot try my case according to the constitution even though I served expert reports and barred my access to justice and trial by jury in front of my peers based on Chapter 74. I challenge that law as abusive to the rights of citizens, abusive to the interest of justice, denial of due process, and mentally/physically punishing to those injured by doctors so a violation of the ADA and Equal Protections Clause. If any of my requests are non-jurisdictional as I am not being granted an attorney in accordance with my intellectual and physical disabilities which limit my ability to do lengthy and complex tasks please DO NOT throw my whole suit out! Just hold a hearing and don't grant that specific request obviously as I have fulfilled every requirement of extraordinary circumstances and physical/mental/financial handicap to be granted a court appointed one in the interest of Justice. I know Judge Horan is going to try to toss out this suit as he has been trying to block my access to the court as should my medical records be granted I will prove I WAS assaulted and operated on without consent and that the government has been involved in a conspiracy to cover it up and let Dr. Clifton Lyndell Cox II who tried to kill me off the hook. He also LIED in a court filing about staying proceedings in state court so basically should he try further to obstruct Justice and block my case I will appeal his findings all the way to the Supreme Court.

Dkt. No. 30 at 2-3.

Through a subsequent notice Ms. McCalley filed, she appears to express the belief that the undersigned halted her state court proceedings, even though the Screening FCR explained that the federal case should be dismissed without prejudice because this Court should not exercise such authority. *Compare* Dkt. No. 32 at 2, *with* Dkt. No. 9 at 6-9. And Ms. McCalley has asked that this Court "halt the appeals

deadline the state court has imposed ... until [she obtains her] full medical records in accordance with HIPAA Law and [is] provided new medical experts." Dkt. Nos. 34, 35, & 36.

### Legal Standards and Analysis

All substantive filings that Ms. McCalley has made in this case reflect her wish that this federal court intervene in a state court proceeding in which she is the plaintiff, for various reasons, including to protect her civil rights. But – regardless where the state case may be proceeding, in the trial court or on appeal – established federal law prohibits intervention by this federal district court. And, if Ms. McCalley desires that a federal court review the propriety of state court decisions, she may only obtain that review by petitioning the United States Supreme Court for certiorari. *See Moore v. Whitman*, 742 F. App'x 829, 832 (5th Cir. 2018) (per curiam) (The "recourse for constitutional violations in the state-court proceedings [is] to seek review from the United States Supreme Court." (footnote omitted)).

Ms. McCalley has, moreover, failed to carry her burden to affirmatively and distinctly establish that this Court has subject matter jurisdiction.

I.    The Court should abstain from exercising any jurisdiction it may have.

First, if there is federal subject matter jurisdiction over Ms. McCalley's lawsuit, the Court should abstain from exercising it under *Younger v. Harris*, 401 U.S. 37 (1971), which, "following *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 10-11 (1987), [ ] also applies 'when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would

disregard the comity between the States and the National Government,'" *Health Net, Inc. v. Wooley*, 534 F.3d 487, 494 (5th Cir. 2008).

To begin, 42 U.S.C. § 1983 – the statute providing a cause of action for constitutional violations by state actors – "does not 'qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding.'" *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) (quoting *Mitchum v. Foster*, 407 U.S. 225, 243 (1972); citing *Younger*, 401 U.S. at 43-47). And, under *Younger*, a federal court should abstain from exercising its jurisdiction when to do so would result in the interference in certain, select state proceedings.

Thus, *Younger* abstention "applies only to three exceptional categories of state proceedings: ongoing criminal prosecutions, certain civil enforcement proceedings akin to criminal prosecutions, and pending civil proceedings involving certain orders … uniquely in furtherance of the state courts' ability to perform their judicial functions." *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (quoting, in turn, *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) (*NOPSI*)); internal quotation marks omitted).

And the doctrine requires that federal courts decline to exercise jurisdiction where three conditions are met: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in

the state proceedings to raise constitutional challenges." *Bice v. La. Pub. Defender Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); internal citations omitted); *accord Hood*, 822 F.3d at 222-23.

This case fits within the third of the three exceptional categories identified in *NOPSI* that "define *Younger*'s scope." *Sprint*, 571 U.S. at 78. "For the district court to address claims that question the manner in which a state court handles the enforcement of its orders would directly cause the federal court to interfere with a state court's administration of its duties." *Dandar v. Church of Scientology Flag Serv. Org., Inc.*, 619 F. App'x 945, 948-49 (11th Cir. 2015) (per curiam) (citing *NOPSI*, 491 U.S. at 359, and then finding that "the district court did not abuse its discretion when it found that the case fell within one of the enumerated circumstances" (citing *Sprint*, 571 U.S. at 78)); *see also Pennzoil Co.*, 481 U.S. at 13-14 ("Both *Juidice[ v. Vail*, 430 U.S. 327 (1977),] and this case involve challenges to the processes by which the State compels compliance with the judgments of its courts. Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained."); *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 671 (10th Cir. 2020) ("Thus, both *Juidice* and *Pennzoil* involved requests to directly or indirectly thwart state court compliance processes." (citing *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002) ("*Younger* governs whenever the requested relief would interfere with the state court's ability to conduct

proceedings, regardless of whether the relief targets the conduct of a proceeding directly."); *Zeeco, Inc. v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-CV-384-JED-FHM, 2017 WL 6539504, at *2 (N.D. Okla. Dec. 21, 2017) ("What *Younger*, *Juidice*, and *Pennzoil* have in common is that they all involved plaintiffs filing separate federal suits in an attempt to enjoin ongoing state proceedings.")))).

The additional *Middlesex County* factors are also present here: "In this case, the state proceedings are judicial in nature and represent important state interests, as state courts must be empowered to enforce their own orders and judgments. Moreover, [Ms. McCalley] has had opportunities to raise [her] federal challenges in these state proceedings and there has been no procedural bar to [her] doing so." *Dandar*, 619 F. App'x at 949; *see also Pennzoil Co.*, 481 U.S. at 15 ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that the state procedures will afford an adequate remedy."); *Moore v. Sims*, 442 U.S. 415, 425-26 (1979) ("Certainly, abstention is appropriate unless state law clearly bars the interposition of the constitutional claims."); *Gates*, 885 F.3d at 880 ("The relevant question is whether the would-be federal plaintiff has the *opportunity* to raise his federal claims in state court." (citing *Moore*, 442 U.S. at 425).

II.    <u>*Rooker-Feldman* deprives the Court of any jurisdiction it may otherwise have.</u>

Further, insofar as Ms. McCalley now attacks the state trial court's dismissal of her case, as she has also requested that this Court stay the deadline to appeal that dismissal, because – as shown by her filings excerpted above – the claims that Ms.

McCalley advances in this Court are "inextricably intertwined" with the state court's rulings adverse to her, this Court lacks jurisdiction to consider claims that are essentially a collateral attack on the state court proceedings.

> "Absent specific law otherwise providing, [the *Rooker-Feldman*] doctrine directs that federal district courts lack jurisdiction to entertain collateral attacks on state court judgments. Constitutional questions arising in state proceedings are to be resolved by the state courts. If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court. The casting of a complaint in the form of a civil rights action cannot circumvent this rule, as absent a specific delegation "federal district court[s], as court[s] of original jurisdiction, lack[ ] appellate jurisdiction to review, modify, or nullify final order[s] of state court[s]."

*Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994) (quoting *Kimball v. Fla. Bar*, 632 F.2d 1283, 1284 (5th Cir. 1980); collecting cases; footnotes omitted)).[3]

As a basis for federal question jurisdiction, Ms. McCalley relies on Section 1983 and the Americans with Disabilities Act. But neither claims under Section 1983 nor under the ADA provide an exception to the *Rooker-Feldman* doctrine. *See, e.g.*, *Anzalone v. Louisiana*, 199 F.3d 437, 1999 WL 1067582, at *1 (5th Cir. Oct. 18, 1999)

---

[3] *See also Hill v. Washburne*, 953 F.3d 296, 306 (5th Cir. 2020) (Plaintiff "cites no legal authority … suggesting that we or the district court have power to order the [state] court to reconsider its order. He similarly does not explain how such an order from us or the district court would not be an extrajurisdictional 'collateral attack[ ] on' the [state] court's proceedings." (quoting *Bell v. Valdez*, 207 F.3d 657 (table), 2000 WL 122411, at *1 (5th Cir. Jan. 4, 2000) (per curiam) ("[T]he *Rooker-Feldman* doctrine deprives federal courts of subject matter jurisdiction over [a plaintiff's] case."))); *Jordaan v. Hall*, 275 F. Supp. 2d 778, 789 (N.D. Tex. 2003) ("[T]he complaint is nothing more than a thinly veiled attempt to circumvent the state appellate process and to collaterally attack – in the guise of a federal civil rights action – the validity of a state court [judgment] and other related orders.").

(per curiam) ("Anzalone argues that this court should recognize an exception to the *Rooker-Feldman* doctrine and allow jurisdiction over his claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA). He contends that the doctrine should apply only when the party has not had an opportunity to raise his federal claims in the state court proceeding. However, this court has held in similar cases that *Rooker-Feldman* operates even when the prior proceedings may have been conducted in the absence of such an opportunity." (citing *Liedtke*, 18 F.3d at 317)); *Miller v. Dunn*, No. 3:20-cv-759-E, 2020 WL 6504663, at *3 (N.D. Tex. Nov. 5, 2020) (Section 1983 is "not a specific delegation to the federal courts that upsets how constitutional determinations are reviewed in the state courts" and "allows a collateral attack on a state court judgment where, like here, a plaintiff's constitutional claims are 'inextricably intertwined' with the state court's rulings against him." (citing *Reed v. Terrell*, 759 F.2d 472, 473-74 (5th Cir. 1985) ("[T]his Court's review of the record in the instant case reveals that the plaintiffs' suit is 'patently an attempt to collaterally attack the validity of [the state court judgment].' A review of the plaintiffs' pleadings and arguments in the instant case reveals that this suit is 'inextricably intertwined' with the state court's awards against the plaintiffs. Thus, the district court did not err in dismissing the instant suit for want of jurisdiction." (quoting *Almon v. Sandlin*, 603 F.2d 503, 506 (5th Cir. 1979), then *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 483 n.16 (1983); citation omitted)))).

Nor has Ms. McCalley shown that another specific law provides an exception to *Rooker-Feldman*'s application here.

And this jurisdiction-stripping doctrine applies even if the state proceeding has not concluded. As a panel of the United States Court of Appeals for the Fifth Circuit has explained,

> [t]here is disagreement among the circuits as to whether all state proceedings, including appeals, must have concluded before the federal suit is initiated in order for *Rooker-Feldman* to apply. Indeed, this Court has taken inconsistent positions on the matter: In *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986), this Court applied *Rooker-Feldman* to bar a federal suit despite the pendency of an appeal in state court; but in *Rowley v. Wilson*, 200 F. App'x 274, 275 (5th Cir. 2006) (per curiam), this Court declined to apply *Rooker-Feldman* because the case was on appeal to a state appellate court, observing that "[*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005),] tells us when a state court judgment is sufficiently final for operation of the *Rooker-Feldman* doctrine: when 'the state proceedings [have] ended.'"
>
> Although *Hale* predated *Exxon*, the split in authority following *Exxon* on the question of finality suggests that that case did not "unequivocally" overrule *Hale*. See *Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) ("[F]or a Supreme Court decision to change our Circuit's law, it 'must be more than merely illuminating with respect to the case before [the court]' and must 'unequivocally' overrule prior precedent." (second alteration in original)). Further, the portion of *Exxon* quoted in *Rowley* – an unpublished opinion with limited precedential value under 5th Circuit Rule 47.5.4 – is found not in *Exxon*'s holding but in its description of the *Rooker* and *Feldman* cases, see *Exxon*, 544 U.S. at 291. *Exxon*'s holding refers only to "state-court judgments rendered before the district court proceedings commenced." *Id.* at 284. Accordingly, we appear to be bound by *Hale* pursuant to this Circuit's rule of orderliness. *See Technical Automation Servs. Corp.*, 673 F.3d at 405-07.

*Houston v. Venneta Queen*, 606 F. App'x 725, 731-32 (5th Cir. 2016); *see also Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 n.5 (5th Cir. 2017) ("In a case pre-dating *Illinois Central[ Railroad Co. v. Guy*, 682 F.3d 381 (5th Cir. 2012),] we found *Rooker-Feldman* to bar review of a state court judgment when the state court appeal was pending at the time the federal action was filed. *Hale v. Harney*, 786 F.2d 688, 689-91 (5th Cir. 1986). Contrary to *Illinois Central*'s explication of the doctrine, *Hale*

suggests that a state court judgment need not be issued by a court of last resort for *Rooker-Feldman* to apply. Because of this apparent tension in our case law, we do not rely on this aspect of the doctrine to resolve the jurisdictional question before us now.").

III.    **Ms. McCalley has not affirmatively and distinctly established that this Court <u>has jurisdiction.</u>**

Finally, even if *Younger* and *Rooker-Feldman* somehow do not apply here, Ms. McCalley, as the party invoking federal jurisdiction, has failed to establish it, after the Court's providing her ample time to do so.

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see also Bowles v. Russell*, 551 U.S. 205, 212 (2007) ("Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider."); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) ("Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims.").

They must therefore "presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Correspondingly, all federal courts have an independent duty to examine their own subject matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) ("Subject-matter limitations ... keep the federal courts within the bounds

the Constitution and Congress have prescribed. Accordingly, subject-matter delineations must be policed by the courts on their own initiative even at the highest level." (citations omitted)).

Ms. McCalley chose to file her lawsuit in federal court, so it is her burden to establish federal jurisdiction. *See Butler v. Dallas Area Rapid Transit*, 762 F. App'x 193, 194 (5th Cir. 2019) (per curiam) ("[A]ssertions [that] are conclusory [ ] are insufficient to support [an] attempt to establish subject-matter jurisdiction." (citing *Evans v. Dillard Univ.*, 672 F. App'x 505, 505-06 (5th Cir. 2017) (per cuiam); *Jeanmarie v. United States*, 242 F.3d 600, 602 (5th Cir. 2001))). And, if she does not, this lawsuit must be dismissed. *See* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Because federal jurisdiction is not assumed, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)); *see also MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) ("Because federal courts have limited jurisdiction, parties must make 'clear, distinct, and precise affirmative jurisdictional allegations' in their pleadings." (quoting *Getty Oil*, 841 F.2d at 1259)).

Under their limited jurisdiction, federal courts generally may only hear a case if it involves a question of federal law or where diversity of citizenship exists between

the parties. *See* 28 U.S.C. §§ 1331, 1332.

In diversity cases, each plaintiff's citizenship must be diverse from each defendant's citizenship, and the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a), (b). "For diversity purposes, state citizenship is synonymous with domicile. A change in domicile requires: '(1) physical presence at the new location and (2) an intention to remain there indefinitely.'" *Dos Santos v. Belmere Ltd. P'ship*, 516 F. App'x 401, 403 (5th Cir. 2013) (per curiam) (citations omitted); *see also Preston v. Tenet Healthsystem Mem'l Med. Ctr.*, 485 F.3d 793, 797-98 (5th Cir. 2007) ("In determining diversity jurisdiction, the state where someone establishes his domicile serves a dual function as his state of citizenship.... Domicile requires the demonstration of two factors: residence and the intention to remain." (citing *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954))).

"The basis for diversity jurisdiction must be 'distinctly and affirmatively alleged.'" *Dos Santos*, 516 F. App'x at 403 (quoting *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397 (5th Cir. 2009)). And the Fifth Circuit "has stated that a 'failure to adequately allege the basis for diversity jurisdiction mandates dismissal.'" *Id.* (quoting *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991)).

While Ms. McCalley has alleged that the damages will exceed $75,000, she has sued multiple defendants that she identifies as residing in Texas, the same state in which she resides. *See Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011) (per curiam) ("Evidence of a person's place of residence … is prima facie proof of his domicile." (citations omitted)); *Stine*, 213 F.2d at 448 ("Residence alone is

not the equivalent of citizenship, although the place of residence is prima facie the domicile."). She has therefore not established complete diversity of citizenship and thus affirmatively and distinctly alleged diversity jurisdiction.

Turning to Section 1331, federal question jurisdiction "exists when 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27-28 (1983)); *see also In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) ("A federal question exists 'if there appears on the face of the complaint some substantial, disputed question of federal law.'" (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995))).

"[T]his 'creation' test … accounts for the vast bulk of suits under federal law." *Gunn*, 568 U.S. at 257 (citation omitted). But "[s]ome claims are 'so insubstantial, implausible, ... or otherwise completely devoid of merit as not to involve a federal controversy.'" *Atakapa Indian de Creole Nation v. Louisiana*, 943 F.3d 1004, 1007 (5th Cir. 2019) (quoting *Oneida Indian Nation of N.Y. v. Oneida Cnty.*, 414 U.S. 661, 666 (1974)). "[A] complaint that alleges the existence of a frivolous or insubstantial federal question is not sufficient to establish jurisdiction in a federal court." *Raymon v. Alvord Indep. Sch. Dist.*, 639 F.2d 257, 257 (5th Cir. Unit A Mar. 1981) (citing *Olivares v. Martin*, 555 F.2d 1192, 1195 (5th Cir. 1977); *Hagans v. Levine*, 415 U.S. 528, 538-39 (1974)); *see also Southpark Square Ltd. v. City of Jackson, Miss.*, 565 F.2d

338, 342 (5th Cir. 1977) (a claim "must be more than frivolous to support federal question jurisdiction").

"Determining whether a claim is 'wholly insubstantial and frivolous' requires asking whether it is 'obviously without merit' or whether the claim's 'unsoundness so clearly results from the previous decisions of (the Supreme Court) as to foreclose the subject.'" *Atakapa*, 943 F.3d at 1007 (quoting *Southpark Square*, 565 F.2d at 342).

As Ms. McCalley's allegations are essentially that her civil rights were violated through the state court proceeding, to allege constitutional violations under 42 U.S.C. § 1983 that are neither frivolous nor insubstantial, "a plaintiff must allege facts showing that he has been 'deprived of a right secured by the Constitution and the laws of the United States,' and that the deprivation was caused by a person or persons 'acting under color of state law.'" *Burroughs v. Shared Hous. Ctr.*, No. 3:15-cv-333-N-BN, 2015 WL 4077216, at *2 (N.D. Tex. June 17, 2015) (quoting *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999)), *rec. accepted*, 2015 WL 4089756 (N.D. Tex. July 6, 2015).

And, where a plaintiff "does not allege facts demonstrating that [a defendant] acted under color of state law," she also fails "to plead and establish subject-matter jurisdiction based on the existence of a federal question." *E.g.*, *Mitchell v. Clinkscales*, 253 F. App'x 339, 340 (5th Cir. 2007) (per curiam) ("The complaint contains no allegation that Mitchell and Clinkscales are citizens of different states; thus, Mitchell failed to plead and establish subject-matter jurisdiction based on the existence of complete diversity. Additionally, although Mitchell argues that Clinkscales is liable

under 42 U.S.C. § 1983, Mitchell does not allege facts demonstrating that Clinkscales acted under color of state law; thus, Mitchell failed to plead and establish subject-matter jurisdiction based on the existence of a federal question. [And t]he district court was required to dismiss the complaint." (citations omitted)).

> "As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments[.]'" In *Lugar v. Edmondson Oil Co.*, [457 U.S. 922 (1982),] the Supreme Court set forth a two-part test for determining whether the deprivation of a federal right could fairly be attributable to the state: (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible"; and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor," and "[t]his may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." Private individuals generally are not considered state actors, and private misuse of state law does not constitute state action. However, a private individual may act under color of state law in certain circumstances, "such as when a private person is involved in a conspiracy or participates in joint activity with state actors."

*McCoy v. Hous. Auth. of New Orleans*, Civ. A. No. 15-398, 2015 WL 9204434, at \*8 (E.D. La. Dec. 17, 2015) (footnotes omitted).

Thus, to bring plausible constitutional claims against the mainly private individuals associated with the state court proceeding that she has sued, Ms. McCalley must allege "that (1) there was an agreement between the private and public defendants to commit an illegal act; and (2) a deprivation of a constitutional right." *Id.* at \*9 (citing *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004)).

Relatedly, judges generally have absolute immunity for judicial actions taken within the scope of their jurisdiction, which also means that judicial officers are

generally immune from suits for money damages. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam); *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 221-22 (5th Cir. 2009).

"Judicial immunity can be overcome only by showing that the actions complained of were nonjudicial in nature or by showing that the actions were taken in the complete absence of all jurisdiction." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994). "A judge's acts are judicial in nature if they are normally performed by a judge and the parties affected dealt with the judge in his judicial capacity." *Id.* at 285 (internal quotation marks omitted). "[J]udicial immunity is not overcome by allegations of bad faith or malice," *Mireles*, 502 U.S. at 11; *see Boyd*, 31 F.3d at 284 ("The alleged magnitude of the judge's errors or the mendacity of his acts is irrelevant." (citing *Young v. Biggers*, 938 F.2d 565, 569 n.5 (5th Cir. 1991))). And "[d]isagreeing with a judge's actions does not justify depriving that judge of his or her immunity." *Greenlee v. U.S. Dist. Court*, No. 09-2243-cv-FJG, 2009 WL 1424514, at *2 (D. Kan. May 21, 2009) (citing *Stump*, 435 U.S. at 363).

Likewise, court clerks and similar judicial personnel "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's discretion." *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001) (quoting *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. June 1981)). This quasi-judicial immunity extends to deputy clerks of court when they act as "explicitly commanded by a court decree or by the judge's instructions." *Id.* at 682. And Fifth Circuit has extended this doctrine to clerks of court who act under the directives and orders of

the court. *See Small v. Dallas Cnty.*, 170 F. App'x 943, 944 (5th Cir. 2006) (per curiam).

Because Ms. McCalley has not included factually plausible allegations reflecting that a judge or court employee she has sued acted outside a judicial capacity, any judicial defendant that she has sued is entitled to judicial immunity.

This judicial immunity also prevents Ms. McCalley from showing the state action required to bring a plausible constitutional claim against private individuals involved in the state court proceeding. *Cf. Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019) ("As for his § 1983 conspiracy claim, we explained in our 1990 case *Pfannstiel* that such claims are unique. The plaintiff must not only allege facts that 'establish (1) the existence of a conspiracy involving state action,' but also '(2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.' No deprivation, no § 1983 conspiracy." (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992))); *Brinkmann v. Johnston*, 793 F.2d 111, 112-13 (5th Cir. 1986) (per curiam) ("In *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982), we held that 'mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy under 42 U.S.C. § 1983."); *Alexander v. Rose*, Civ. A. No. 16-3556, 2016 WL 9560298, at *5 (E.D. La. Oct. 24, 2016) ("In this case, Judge Reese is the only state actor defendant. All of the other defendants are private citizens who could not act under the color of state law. Therefore, to maintain an action for conspiracy to deprive him of his civil rights,

Alexander would have to have a viable § 1983 claim against Judge Reese, which he does not, due to Judge Reese's judicial immunity. As a result, Alexander cannot maintain § 1983 conspiracy claims against White, Pierce, First NBC or LeDoux.").

Turning to the ADA, Title II of the statute "covers discrimination in the provision of public services." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671 (5th Cir. 2004) (citing 42 U.S.C. § 12131 et seq.). And it

> states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also* 28 C.F.R. § 35.130(a) ("No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity").

*Greer v. Richardson Indep. Sch. Dist.*, 472 F. App'x 287, 290-91 (5th Cir. 2012) (per curiam) (footnote omitted).

But merely alleging that a defendant has violated the ADA is not enough to allege a plausible claim under the statute and therefore establish federal question jurisdiction. To do both, a plaintiff must allege facts to show – or from which the Court may infer –

> "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability."

*Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 235 (5th Cir. 2017) (quoting *Melton*, 391 F.3d at 671-72); *accord Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

Ms. McCalley has not alleged facts showing that she is a qualified individual

within the meaning of the ADA or that the non-judicial defendants excluded her from participating in the state court proceeding because of a qualifying disability. She has therefore not shown that her ADA-based allegations provide for jurisdiction under Section 1331. *Cf. Mitchell*, 253 F. App'x at 340; *Addams-More v. Moore*, No. 3:96-cv-2254-D, 1997 WL 472501, at *1 (N.D. Tex. Aug. 12, 1997) ("The essence of Addams-More's creative theory is that state courts and their officers and employees … can be held liable under the ADA if she can demonstrate that their decisions were based on her disability. If she is correct, the federal courts would in effect become appellate courts for state-court rulings anytime they involve a decision adverse to a person who is disabled within the meaning of the ADA. Congress had no such intent in enacting Title II.").

And, insofar as Ms. McCalley invokes federal criminal statutes, even if such a statute may apply here, she may "not assert a valid basis for federal question jurisdiction" by relying "on federal criminal statutes only," *Robinson v. Pulaski Tech. Coll.*, 698 F. App'x 859 (8th Cir. 2017) (per curiam) (citations omitted), as she "has no standing to institute a federal criminal prosecution and no power to enforce a criminal statute," *Savannah v. United States*, No. 3:07-cv-2052-O, 2009 WL 1181066, at *2 (N.D. Tex. Apr. 30, 2009) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *United States v. Batchelder*, 442 U.S. 114, 124 (1979)); *see also McKeague v. Matsuura*, Civ. No. 08-00571 ACK-KSC, 2009 WL 89112, at *2 (D. Haw. Jan. 12, 2009) (citing "a handful of federal criminal statutes ... fails to sufficiently demonstrate that [a plaintiff's] claims arise under federal law" (citation omitted)).

In sum, Ms. McCalley's operative complaint does not reflect that she has asserted a substantial, disputed question of federal law that could allow this case to proceed under Section 1331.

## Recommendation

The Court should dismiss this case without prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 24, 2021

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE